March 31st 1319, the Judges delivered their Opinions seriatim.
Judge Coalter.
The Bill in this case was filed by Coleman and wife, to have partition of lands between the female plaintiff and her two brothers, Johnson and George Cleveland, agreeably to the Will of their father; alledging that, though, by that Will, her mother was empowered to divide the estate, yet it was intended that an equal division should be made, which was not done, she having devised to the plaintiff a much less share; wherefore an equal division is claimed.
As to a part of the land, however, in which they thus claimed partition, it is alledged that it formerly belonged to one William Elliott who sold and conveyed it to John Hough; but, for certain reasons, it was agreed between them to rescind the contract; after which, Elliot §old and *331 conveyed to James Cleveland the father of the female plaintiff; that Hough never re-conveyed, but, on the con - trary, fraudulently sold and conveyed it to one Butcher, whose son and heir sold and conveyed it to Alexander; wherefore the Bill also demands a delivery of the title deeds, and a decree that Alexander shall convey.
As it regards Alexander then, his rights were equally in conflict with those of the female plaintiff and her brothers. Indeed, if she should be found entitled to no more than the quantity of land devised to her by her mother, the brothers alone would be interested in the dispute with him, as her claim could be satisfied out of the other moiety hereafter mentioned, there being more than enough for that purpose. The answers of the brothers express a perfect willingness to have the partition made, in such way as the Court may say she is entitled to, under the Wills of their father and mother.
It became necessary then, before any decree for partition, that the subject to be divided should be first ascertained. It was proper, too, that this should be settled definitively and finally, if possible, as a re-adjudication and alteration in this respect, when the final decree for partition is about to be made, would inevitably require new reports and allotments! But, in this particular case, such final decree, as to this matter, was more especially called for, because, as I understand the case, William and Robert Elliott held each an undivided moiety of a tract of land, of which William sold and conveyed his moiety as aforesaid, and the legal title to which became vested in Alexander:—the bill states that James Cleveland the father purchased from both Robert and William Elliott, and so became entitled to the whole tract. Now, if Alexander’s title should remain firm, then a partition would first be necessary between the female plaintiff and her brothers, on the one part, and Alexander on the other, so as to sever the moieties; whilst, on the other hand, if his claim is put out of the way, the whole tract could be divided. It was therefore expedient, if not absolutely necessary, that this preliminary question should be finally settled, before proceeding to decide and adjusts *332 the rights of the parties claiming to have partition amongst them of this subject.
The cause was therefore heard on this point, and .a decree pronounced, that the deed from William Elliott to Hough, that from Hough to Butcher, and that from the heir of Butcher to Alexander, so far as those deeds convey any title to the land, be set aside, and are declared void, and that the title of the plaintiffs to the land in the bill mentioned be quieted. The decree then proceeds,— “ and by consent the cause is continued as to the other defendants.”
This decree.then, as it regards Alexander’s title to the land, avails as much to quiet the other defendants as the plaintiffs, and was certainly intended to be final and conclusive as to Alexander, as he is dismissed from the Court, the cause being continued as to the other parties only.
A defendant (I apprehend) may be sent out of Court, as well when there is a decree against him, as when there is one in his favour, dismissing the bill as to him:—the decree may, in so many words, put him out of Court, or, us in this case, may do it, by decreeing against his rights, in a case in which he was entitled to partition and to be considered even as a plaintiff if his rights had not been rejected, and continuing the case only as to the others, so as to give him no longer a day in Court.
But, if the decree had been in his favour, and the bill dismissed as to him, and if the other parties .could have appealed from such dismission, as I think I can shew not only from reason but precedent, then I think it follows that he could also when the decree is against him.
Partition ought not only to be made of the whole subject, but in a way least calculated to reduce the value of the various parts; and though it may sometimes happen that subjects lying detached must each be divided, yet it rarely happens that an entire tract ought to be split into double as many pieces as there are claimants. The subject to be divided ought therefore to be ascertained before the final decree; and had Alexander been dismissed from Court, or a partition made, and a moiety decreed *333 to him, how could these parties have moved a re-hearing as to that moiety, so as to have it divided amongst them, without bringing him, or his heirs, in case of his death, which has happened, into Court? This (I apprehend) they could have done, only by bill of review and subpoena. Or suppose, in this case, Alexander had not appealed, but, on the final hearing, the parties had wished to alter the decree, so as to compel him or his heirs to convey; could they have obtained such amendment without bringing him or his heirs into Court?
The case of Gaines v. Fulcher, which I believe is not reported, and the case of Ball’s devisees v. Ball’s executors and widow, 3 Munf. 279, are precedents in support of my position. The former was a suit to subject mortgaged slaves, in possession of Fulcher and others, to the payment of the debt for which they had been mortgaged; and the Bill was dismissed as to Fulcher. The plaintiff appealed. This was necessary, I apprehend, not only to preserve the lien on those held by Fulcher, but to subject them to a payment of a due proportion of the debt, in aid of the other defendants, should they be ultimately held liable; and, altho’ the question as to the finality of the decree was not argued, yet, as that case came on to be heard shortly after the appeal in this case was granted, the point was not unattended to by me. I find this memorandum in my note of that case. « But is not this “an interlocutory decree, the case not being out of “ Court as to all the parties? See Alexander v. Coleman " &c., now depending, on a similar point. I wished that “case argued before this was decided, but was told that « case would go off on another point.” The point then was made to the Bar, who declined arguing it; and I find this farther note:—“ I think this a final decree as to «Fulcher, and am willing to take it up on the other “ points.”
From this opinion I should now feel perfectly willing to depart, had it even been made up after argument of the point, were I satisfied it was incorrect; but I am confirmed in it’s rectitude by the other case. The Bill in that case was filed to have a settlement of the Execu *334 tuor’s account, and a distribution of the slaves and other personal estate amongst the plaintiffs; they insisting that, by a settlement on the widow, she was barred of any claim thereto. It appeared, however, that a decree of the County Court, never appealed from or reversed, had affirmed her right to a share of the whole personal estate. It also appeared that she had received her share, and no more than her share, in the slaves; she had also received, as the Executor allcdged in his answer, a part, (whether too much or too little does not appeal*,) of the other personal estate. The Chancellor dismissed the Bill in tato, as to her; and the plaintiffs appealed. The dismission of the Bill as to her, so far as it regarded the slaves, was affirmed. But as no settlement of the other fund had taken place, and as it might turn out that she had received too much, or too little, of that fund, and as all persons interested in the surplus must be before the Court before a decree as to it; as it would have been error to have decreed as to it without the proper parties; and as one of those parties was dismissed, in toto, from the Court, and the dismission as to her placed the cause in such a situation as that no correct final decree could be pronounced; it was reversed for that error. It is true she might have been brought back into Court, by a bill of review; but, if that had been rejected, then the parties must have taken a decree confessedly erroneous, or must rectify this first error by appeal: but if a bill of review could have been filed for this purpose, an appeal would equally lie.
I am the more confirmed in this opinion, because the cases heretofore decided to be interlocutory, are cases in which all the parties remained in Court, and in which it was competent for them, by motion, to have a re-hearing, • and a correction of the decree; and this capacity to move a re-hearing, I understand to result from the consideration ifrni the parties remained in Court, (a)
But if a plaintiff who continues in Court until the last decree, may appeal from a dismission of his Bill as to ono Pai>ty> (whether rightfully or wrongfully dismissed,)' because it is final as to his claim against that party, against whom he can have no decree on the final hearing *335 without bringing him again into Court, I should think it followed, a fortiori, that the party decreed against and turned out of Court, (altho’ wrongfully and erroneously turned out,) and who consequently would be no party to the last decree, could appeal.
If I am correct in these premises, it only remains to make some farther remarks corroborative of the opinion heretofore advanced, that this decree concluded Alexander's rights, and dismissed him from the Court. If it did all this, it is a final decree, by which he may consider himself aggrieved; and consequently he may appeal from it.
I think I have sufficiently proved that, in order to a correct ultimate decree of partition, the Court ought to have made a final decree as to Alexander. Suppose the Court had expressly declared, that, as a necessary means to a correct decree between the other parties, it was indispensible to hear this case in the first instance; and to decree therein finally, as between the female plaintiff and her brothers, considering them all as plaintiffs in partition on the one side, and Alexander on the other, and had decreed that he should convey the moiety claimed by him to them, and pay them their costs; or suppose, (what is no more than the same case a little differently stated,) that all the devisees had united, as plaintiffs, in the Bill, had made the same statement as to Alexander's title, had called for a conveyance from him, and a division amongst themselves, of the whole tract, or, if his title should be found good, that a partition should be made between them and him into moieties, and then a division of the moiety between them; and the cause had been heard between them and him, prefaced as above stated, and he had been decreed to convey to them and pay the costs; could any doubt exist as to the finality of either of these decrees, as it regards the rights of those claiming partition on the one side, and Alexander on the other.
But, when the Decree in question was pronounced, it was equally proper that it should be final in it’s character as in the case last above supposed. We will not suppose then that the Court intended to make an improper *336 Decree in any respect. They go on to settle the rights of Alexander, and to annul his title. Itis true they don’t direct him to convey:—the plaintiffs, perhaps being of opinion that, as their ancestor had a conveyance from William Elliott, if the other conveyance from him was delivered up and declared void, they would hold under a better title, (having perhaps a general warranty from him,) than by a conveyance with special warranty frota Alexander. But, be this as it may; they had a right to be satisfied with the decree in it’s present form. They had a right to believe that, if the deed was delivered up or declared void, it could never be produced in evidence against them, and that a copy could not, the original not being lost, but cancelled; and that this decree would be equal to cancelling or vacating a prior patent in favour of a subsequent patentee.
As to costs, all that can be inferred, from the silence ■of the decree in that respect, is, that, as costs are in the discretion of the Court, they did not choose to make him pay costs, which it might have been difficult to adjust, as he certainly ought not to have paid the whole, when part was incurred in consequence of the other branch of the controversy; and his case may have been thought sufficiently hard without that addition to it. But, to leave no doubt as to the intention of the Court to make the decree final as to him, they enter a special continuance as to the other parties alone. Suppose this had not been done; a question might have arisen under the Act of Assembly, (Edit. of 1794, 1803 and 1814, p. 84,) whether, as the cause was called, and a decree final in it’s nature made as to one defendant, and no ulterior proceedings directed as to the others, there was not a discontinuance of the cause:—if so, all parties would have been out of Court, and consequently, under the special continuance in this case, Alexander would have been thrown out. But, if this continuance was not necessary to keep the case in .Court as to ti^em, it could only have been resorted to as a means to shew that the decree as to him was final, and that the cause, for the future, remained in Court as to the other parties alone: and this part of the decree is en *337 tered by their consent, shewing their willingness to con-aider the case as thereafter depending between themselves only, and that no other or further decree was wished against him.
Suppose Alexander had not appealed, could they, on the final decree between themselves, have had an alteration in regard to him, so as to compel him to convey, or to account for rents? Had they gone on finally to a bare decree of partition, after his death, would such decree have been erroneous because the cause had not been revived against his heirs, when, in fact, it never had been abated as to him; his name being off the docket at the time of his death? Or how could his heirs, or he, had ho lived, have appealed from a decree in which the other parties alone were named, and the cause heard only between them?
But, again; suppose, after this decree, the parties had wished to strengthen their case as to Alexander’, could they have taken Commissioners to examine witnesses;? or could he have done so, when his name was no longer on the docket?
As to viewing this case with analogy to the cases of writs of error from the King’s Bench to the Commoir Pleas, I think an examination of the cases will shew that the writ will lie as well where a part of the demand against the same party, although not the whole demand, is adjudged, as where the demand against one party is adjudged while the original is pending as to the others; and consequently such view supports my position.
Metcalf’s case, 11 Co. Rep., was a writ of error to a judgment, quod computet, in an action of account. This judgment was not to the damage of the party:—it wa's no more than what a writ of Enquiry would be in an action of trespass or assumpsit; nothing is recovered Against the party until the account is taken, when the judgment is given for what is found due:—it was therefore not such judgment, ad grave damnum of the party, as the writ of error means. And, though general principles are laid down in that case, yet the came case *338 s^iews ^iere are exceptions to those principles: as where the Judgment, though it does not settle every thing, is nevertheless final as to part, or where, though pending as to some 0f toe parties, it is nevertheless final as to others. A reference to a number of such cases will be also found in Bac. Abr. Title Error, Letter A.
It will thei-e be found that, in case of ajndgment in Ejec~ Hone Firmer by default or on demurrer, a writ of error will lie before a writ of enquiry of damages executed; for the judgment quod recuperet possessionem is perfect, and the plaintiff may have execution; and if the defendant were hindered of his writ of error, it might be in the plaintiff’s power, by refusing to bring or execute his writ of enquiry, to delay the defendant forever.—So also of a like judgment in debt, where the plaintiff takes a writ of enquiry.
If my opinion in this case, should be considered as in hostility to any former decision of this Court, it is not so understood by me.—I think this case would go farther than any other decision here, and farther than I would be justified by the law in going.'—Until this Court shall be desirous to reconsider any former opinion given, I shall always consider myself bound by solemnly adjudged cases; but surely I must be correct in saying, that if this decree puts this party out of Court, so that he could neither take depositions, nor move for a re-hearing in the cause, it goes beyond any case heretofore adjudged.—I think when this Court have decided that, where a suit is brought to subject property to be sold under an allcdged mortgage or incumbrance, or to sell lauds in the hands of devisees, &c., and where there shall be decrees for such sales, in all which cases a man’s property may be sold contrary to the plainest principles of Equity, as appeal’s would have happened in the case of Mackey v. Bell, 2 Munf. 523, it has gone as far as either the letter or sound policy of the law will justify.—In such ease, the decree is not final; because (as I understand the decisions,) the party is still in Court, and the Court may alter it’s decree after the report of the sale, and the payment of the money, is made.—What effect such alteration, in that *339 stage of the ease, would have upon the party whose properfy has been sold, or upon the purchaser whose money may have gone into the hands ol‘ an insolvent person, is a question so important as to require, perhaps, at least, great caution in the Courts below in preserving to themselves, and to this Court, in case they err, the power to do final justice to the parties;—or otherwise persons might be deterred from bidding at such sales.—Should it, however, be hereafter decided that such a sale vests an indefeasible title in the purchaser, (concerning which I mean to intimate no opinion,) altho’ the Court in it’s final decree may say that it’s first decree was altogether erroneous and improper, then the question may arise how far such decree was not, in reality, final and appealable from, being without the reach of the Court on the final hearing, and beyond it’s power to rectify it.—What effect too the opinion of this Court, that such decree is interlocutory, because it ca.n be altered at the last moment that the cause and the parties affected thereby remain in Court, will have in the decision of the question as to the purchaser's title under such decree, is one which may also be worthy of enquiry whenever that case comes before us.
According to the now settled law of the Court, however, such decrees I admit to be interlocutory, because, as I understand, the party remaining in Court can procure that Court to rectify it’s own errors; but where he is not in Court, and so can not procure a re-hearing and alteration of the decree, which I think is the effect of the decree in this case, the reason of the decisions, and consequently the decisions themselves, do not preclude the appeal which has been taken.
Judge C viiii tn.
The question now to bo decided is whether the dismission of the appeal by the Chancellor was correct: and it being admitted that this question depends upon the character of the Decree from which the appeal was taken, we are brought at once to the enquiry whether that decree be final or interlocutory.
I have examined with great attention every case in this Court, on the subject of Interlocutory Decrees, from *340 Young v. Skipwith (2 Wash. 300) to the present time. They are so well recollected that I deem it unnecessary to enumerate them, or to detail their circumstances. They were all, without exception, decided on the same general principle; that every Decree which leaves any thing to be done in the cause, by the Court, is interlocutory, as between the parties remaining in Court. But is the decree interlocutory as to those persons also, who, although parties to the decree, remain no longer parties to the cause in Court? I do not understand this Court to have given such extension to the principle: for every instance in which it has been applied at all, presents the case of the parties remaining in Court. And the reason assigned why those decrees were interlocutory and not final, viz., that the Court below, might itself have corrected them, shews that the principle is restricted to those cases where the parties are retained in Court: for upon what principle of judicial proceeding can any Court change or alter decrees for or against persons who are no longer parties before it?
But while no case can be found in which it has been held, that a Decree is interlocutory as to any person no longer remaining in Court a party to the cause, there are cases in which this Court has sustained appeals from Decrees dismissing the Bill of the complainants as to some of the defendants, but leaving the cause still in Court as to the complainants and the other defendants. Ball’s Devisees v. Ball’s Ex’or. and widow, (3 Munf. 379). is a case of this description. The Chancery Court . dismissed the Bill as to Mrs. Ball, the widow, hut retained the cause in Court as to the complainants, and the other defendants. Gaines v. Fulcher, is another Case of the same sort; the Chancery Court having dismissed the Bill as to Fulcher, one of the defendants, leaving the case undecided as to the others. In both these cases, appeals were taken to, and sustained by. this' Court; which would not have been done, hut on the principle that the Decrees were final. If the complainants in these cases, whose rights as to some of the defend *341 ants were thus decided on by the inferior Court, but wlio nevertheless still remained in that Court, for the purpose of settling the controversy with the other defendants, were allowed to appeal before that other controversy was settled, it would be difficult to assign a reason why one of two defendants, whose rights are finally acted upon by a decree which, (leaving him neither interest nor liberty of action in Court.) puts him out of Court altogether, should not also be permitted to appeal.
I do not think it necessary to refer to the English decisions on this subject, because I readily admit that a greater latitude has been allowed in England than in this country; and because I consider the right of appeal from a decree like the present, to be established, by the decisions of this Court.
But putting all the decisions out of view, and considering the question as an original one, I could not put upon the Act of Assembly defining the Jurisdiction of this Court, any other construction than that given to it in Ball’s Devisees v. Ball’s Ex’or. and widow, and in Gains v. Fulcher. This Court is to have jurisdiction (1 R. Code, p. 60) in all cases brought before it, « by “ appeals, writs of error, or supersedeas, to reverse de<c crees of the High Court of Chancery, or Judgments “ of the General Court, or District Courts of this Com- “ monwealth, after those decisions shall be final there.” The object of the law is to give relief, by way of appeal, to persons aggrieved by the erroneous decisions of inferior Courts; but this relief is postponed till «those decisions shall be final there,” What is the decision that is thus required to be final? The decision of the cause as to the party aggrieved, and not its ulterior decision as to other parties litigating other controversies. It is true that this decision must be final; but the decision of a Court, is, emphatically, final there, when that Court can no longer change or alter it: and such I conceive to be the law in relation to a decree which decides the controversy as to one of the parties and puts him out of Court,
In the case now before the Court, Alexander’s rights. were finally acted upon, aud taken from him, by the de *342 cree in question: for the deeds under which he claims title were declared void, and the title of his adversaries, (who were all complainants as to him) was confirmed. jfc js no objection to the character of this decree as final, that it does not give costs; for costs are given or not given, at the discretion of the Chancellor. Nor is it any objection to the decree in this respect, that Alexander was not directed to convey or release his title to his adversaries; for a decree is not the less final, for omitting to give all that the complainants ask, or all that the Court ought to give. That would only prove the decree to be erroneous. It is final when the Court gives all that it intends to give, as to one of the parties, and puts him out of Court; and by putting him out of .Court, takes from itself the power to change or revoke it. Such was the case in the present instance. Alexander’s title was derived by successive deeds from William Elliott; from whom also the other parties in the cause derived their claim to the lands in controversy. The County Court thought that nothing farther was necessary than to set aside Alexander’s deeds, and establish the validity of the deed under which the others claimed; thus extinguishing, as they thought, Alexander’s title, and setting up and confirming that of his adversaries. Whether this was all that they ought to have done, is another question, and unimportant now to be decided. It is sufficient that it was all they intended ever to do in relation to Alexander. That such was their intention, is manifest from the order immediately following the decree, which continued the cau.se in Court as to the other parties only. I sayas to the other parties only: for it is expressly continued as to them, and is not continued as to him. I know not how a Court of Chancery could more clearly show its determination to turn a defendant out of Court. This order of continuance, although the act of the Court, was also the act of the parties concerned in it; for it was entered up by their consent. Their consent that the cause should, thereafter, be retained in Court, as a cause between them only, and in which Alexander had no longer any interest or agency, shews also that, although *343 they had demanded in the Bill, more of Alexander than was given by the decree, yet they were satisfied with what the decree had given them. I consider, then, the Decree, as to Alexander, completely final.
I readily admit that, if it be clear that the law does not give jurisdiction to this Court, nor arguments derived from considerations of expediency, would induce the Court to assume it. But if the law be doubtful, sucli arguments may, with propriety, be resorted to for the purpose of aiding in it’s construction. Alexander’s rights being taken from him, and he turned out of Court, is it just that he shall be restrained from applying for redress, until other persons shall settle other controversies in which he lias no interest; and that too, in a suit, the termination of wfiich, he, of course, can not expedite, but which they may indefinitely postpone? It is worthy of remark also, that this suit was for partition between the other parties, of a tract of land, an undivided moiety of which was claimed by Alexander, on an adversary title. It was essential to the purpose of a just and advantageous division, even as to the other parties, that his claim should be previously put to rest forever, or finally established; for the fund should be ascertained before it is divided.
I am, therefore, of opinion that the Decree of the Chancellor dismissing the appeal, is erroneous.
Judge Brooke.
In the decision of this case, I have not thought it necessary to review all the cases that have been decided in this Court, for the purpose of ascertaining how far it has gone, and at what point it has fixed the limit between interlocutory and final decrees. The case row before the Court is certainly not of the character of any of the cases in which decrees supposed to be interlocutory have been adjudged to be final. It differs from the cases of Ball’s devisees v. Ball’s executors and widow, 3 Munf. 279, and Gaines v. Fulcher, in which it might have been questioned whether the decrees were interlocutory or final. In neither of these cases was the point made: in the first case, the decision was that the Chancellor erred in dismissing the Bill as to one of the de-, *344 fondants who was a necessary party in the filial decree: the error to be corrected could not have been corrected by dismissing the appeal only. In the case now under consideration, the decree is that sundry deeds, so far as they are intended to convey any title to the lands in the bill mentioned, be set aside, and that the title in the plaintiffs be quieted. Thus far, it was not final as to Alexander: he had not been decreed to convey his legal title to the land in question, according to the respective interests of the parties, as was prayed by the Bill; nor could such decree have been pronounced until thé quantum of each had been ascertained. There is nothing in it that puts the appellant out of Court. The continuancé of the cause as to the other parties, by consent, was ineffectual, and can not be considered as the act of the County Court. If that were material, no costs were decreed against him, which would have followed a final decree, unless, for reasons which ought to have been stated in the decree, he was not to pay costs. From this decree Alexander appealed, and the Court erred in permitting him to take that course: but that error will not convert a decree, which before was only interlocutory, into a final decree. On these grounds, I am of opinion the decree of the Chancellor ought to be affirmed.
Judge Roane.
This is a bill brought by the appellees in the County Court of Loudoun, against Johnston & George Cleveland, and against Hough and the appellant Alexander. In that suit the said Clevelands were the principal defendants, and the principal object of the suit-had relation to them. They were the principal defendants, and the suit relates principally to them, because, in fact, they are the defendants first named in the several subpoenas instituting the suit; because it claims from them an equal third part of their common father’s whole estate, whereas it only demands from Alexander a part thereof; and because they demand nothing against Alexander, without first establishing their right, and the extent thereof, against them, the Clevelands. The claim against the former is merely incidental to, and depends upon, the appellee’s success against, the latter. Every *345 argument, therefore, which inhibits one of several defondants from evoking his cause into the appellate Court, before a final decision thereof, holds a fortiori in relation to a case of this character; a case in which the party claiming to appeal has only a partial interest in the subject of controversy, and against whom no decree can be justly rendered, but in the event of getting a decree against another and more principal defendant.
The claim of the appellees, as against the Clevelands, more particularly, is, that they be let into the enjoyment of one third part of their father’s estate, and be put in possession thereof; and they pray the Court to decree to them this right and this possession. Their claim against Alexander and Hough is, that the Deeds, by which they hold a preferable legal title to a tract of land part of such estate, be cancelled, and Alexander decreed to convey the said land to the appellees and the said Clevelands, according to their respective interest therein. As to the propriety of these prayers, or either of them, it is not necessary to say any thing. It is sufficient that the claims are made. Being made, they ought to be decided on by the Court. At the same time, it would not be difficult' to shew, that, as the appellees have an indubitable right to get the decision of the Court as to the validity and extent of their right, it is equally proper that, when their part is ascertained, they should not only receive a Deed for the land in question, but for that specific part thereof, by metes and bounds, to which they may be found entitled. The whole matter ought to be ended in this suit. The appellees ought not to be driven to another suit, or to a separate proceeding in this suit, to recover from the Clevelands a Deed for their proper portion of the land in controversy.
With respect to the claim against the Clevelands, (the substratum of the decree before us,) there has been no decree whatever upon it. The case, as to it and them, is. still depending in the County Court; and this case exhibits the singular spectacle of the principal subject abid-ing in the Court below a decision upon an incidental one in the appellate Court. It has not yet been decided *346 that the appellees have any title to the estate in controversy, nor what their due proportion is. If it should be found, hereafter, in the County Court, that the appellees have no cja¡m whatever to any part of old Cleveland’s estate, in consequence of a later Will made by him, a release, or the like, the question now discussed before us would become an abstract one; one in which no recovery could be had. If the case, however, is to be separated; if two causes are to be carved out of what is intrinsically one; an opposite course of proceeding should have been adopted. The branch of the case now before us, should have waited in the County Court, until it had been decided, in the other branch, in the appellate Court, whether the appellees were entitled to any part, and to what part, of the said estate. In that case, it would have been practicable, (which now it is not,) to decree in what pi’oportions Alexander is to convey the land to the several claimants, and particularly the appellees; which is an essential prayer of their bill.
The deci’ee before us is not final even as to Alexander. It is not final, whatever may be it’s terms, not only because it necessarily depends on the decree which is to be rendered against the Clevelands, and must be conformed thereto when it is made, but because it omits to decree a Deed to be made to the appellees, and that for the specific proportion of the land they may prove to be entitled to. This last is the prayer of. the appellees’ bill as it relates to Alexander; and a Decree which neither grants nor rejects a proper and necessary prayer of a plaintiff’s bill, but passes it by, can not be deemed final. That deed ought to have been decreed to be made: without it, the appellees have no legal title to the land in question, and could not maintain an Ejectment for it. It was proper to be asked by them, and they ought to receive it at the hands of the Court, if their title to the land is established: it is not enough to declare the appellant’s deed to be void. A Decree omitting to i’espondto a nxost important prayer of a Bill, will not, in a doubtful case, be taken to be final. A Decx'ee which entirely omits to act upon the main object of the suit, and to deci’ee against *347 tlie principal and necessary defendants, and which stops short of deciding upon what is properly asked as to the others, can not be final. So it can not be final when it may be, in effect, reversed by another decision given by the same Court in another branch of the same cause. It is in it’s nature interlocutory, and would be so considered even if the Court rendering it had declared it to be final.
In this decree, however, no such declaration is contained. No costs are given against the appellants, which is the general criterion of a final decree.'—The appellants are not dismissed from Court, otherwise than by implication;—by the implication which arises from continuing the cause, by consent of parties, as to the other defendants. Without that consent, it is presumed the decree would not have assumed its present shape, nor the present pretension have been made:—but that consent, it was solemnly decided by this Court, in the case of M'Call v. Peachy, can not make a decree final which in itself is not so;—can not give to the appellate Court cognizance of a case before a final decision is made in the Court below.—Unless you consider this Decree interlocutory, the defendant will get clear of the costs, when the title is found against him. He will be held to quiet the title of the appellees to land in which it may be hereafter decided they have no interest.
In deciding against the right of appeal in this case, in which all the defendants are necessary defendants, and all the parts of the cause constitute one cause, I decide nothing as to cases in which the proceeding .in the Court of Equity may be abused;—in which, for example, several distinct suits may be formed into one suit, and the demand against one defendant has no necessary connection with that against another.—In that case it might be argued, at least, in favor of a defendant, (but on this point I give no opinion,) that the suit is, in effect, a distinct suit.—It might be said to be hard to keep one man in Court against his will, merely because of the existence, in effect, of a separate and distinct suit against another, It would be no how necessary to a complete decree in *348 either case, that the cause of one defendant should await on that of another. It may be, that a party ought not to be restrained, in his right of appeal, because a plaintiff has arbitrarily chosen to consider that cause as joint, which is in it’s nature several.
jn denying the right of appeal in the case before us, it is true the appellant is postponed in his admission into the appellate Court: but he is postponed no longer than until the cause, in all it’s parts, has been decided in the Court below. He finds his equivalent for that delay, in this;—that the whole matter is to be now settled, and he exempted from other suits. He also finds an equivalent in the acknowledged right of the Court below to correct it’s own errors, up to the time of dismissing the cause from the Court in all it’s parts. That Court, by it’s more mature deliberation, may render the appeal, now before us, wholly unnecessary.
I ought to apologize for discussing, in any degree, on the merits, a question which has been solemnly settled in this Court. It was unanimously settled twenty-two years ago, on great consideration, the very able bar of that day giving to the Court the aid of it’s opinions and deliberations. The decision was made in the case of M'Call v. Peachy. It was then decided that there can be no appeal from an interlocutory decree, even by consent of parties. All the arguments now urged for the appellant, were then used and overruled. Inconveniences were admitted to exist, but they were referred to the Legislature:—and the Legislature has since acted upon them. That decision has been acquiesced in until lately; conformed to by succeeding Judges; and frequent recognitions of it’s principles have taken place in this Court. I wish to refer particularly to that decision and to the others, and will subjoin a few additional observations upon the subject.
With respect to the decisions in the cases of Ball v. Ball, and Gaines v. Fulcher, I know but little.—I did not sit in either case. They were not, however, discussed, jf considered, on the point of jurisdiction.—As to that point, they may be considered sub silentio, as they are *349 single decisions. I do not stop to enquire whether they conflict with the former decisions in this particular: but, if they do, they are not entitled to outweigh the solemn resolutions of the Court in the case of M‘Call v. Peachy, and the succeeding cases.
The decision in the ease of M‘Call v. Peachy was hottomed as well upon general principles of construction found in the English decisions, as upon the imperious words of our Statutes.—As for the general principles of construction, they are best exhibited in Metcalfe’s case, 11 Co. 38 a.—One of those principles is, tlrat a Writ of Error only lies upon & final judgment, in account or partition for example. The terms in a Writ of Error, “judicium inde redditum,” were expounded to mean the principal and final judgment. They were so expounded Cinter alia,J because, when we speak of a thing or person, the principal or most worthy is to be interrded.—It was also adjudged, that the words “judicium redditum,” as aforesaid, are to be intended, not only “ de prindpali judicio,” hut also “ de integro judido.”—They can not be satisfied by a partial, and much less by an interlocutory judgment.—As the Writ of Error rehearses am those who are parties to the original writ, and then says, “ si judicium rxfTE redditum,” &c., it proves that it does not lie before it is decided as to all tire parties, and the whole matter is determined.
Another reason assigned for this, is that the whole record is supposed to be either* in the Court below or the appellate Court, and that the original is entire and can not be in both Courts at the same time.-—It was accordingly resolved in that case that, as the judgment intended is that which goes to the whole demand, so tire record shall not bo removed till the whole matter is determined, it is stated more particularly, that, in the case of several defendants, if the original is one, and the declaration one, one of the defendants can not have a Writ of Error ’till the whole is determined; for that, as aforesaid, the record cart not be in the King’s Bench and Common Pleas at the same time. It was also resolved that the record is not remov *350 et* lm^tifinal judgment, for the farther reason that, until then, the Chief Justice of the Common Pleas has no authority to send it; the words of the writ being, “ si judicium hide redditum sit, tunc recordnm, 8fc. mittatis, &c.” It is not to be sent until (“ tunc”) the judgment, that is, the principal and final judgment, the judgment (“ de integro,”) upon the whole matter, and as to all the parties, shall be rendered.
These principles in all their parts apply emphatically against allowing the appeal in the case before us. I will merely stop to repeat that the judgment heretofore rendered and now before us, is not the principal, but an incidental judgment:'—the principal judgment will be that deciding whether the appellees have a right or not to the estate in question. So it follows that the judgment before us is not the entire judgment:—the judgment forming the substratum of the appellee’s claim against Alexander has not yet been rendered, and is now wanting; and, when pronounced, it may render the present appeal wholly unnecessary. The principles in Metcalfe’s case .are sound, and conclude the question before us. It is not •denied that there are some exceptions in the English books from these principles:—some such may be found in Ba„con and other abridgments. But, while it is not admitted that the case before us would form an exception even in England, it is strongly influenced by the imperious .provisions of our Statutes.
The force of the above principles was held, in the case of M‘Call v. Peachy, to be entirely corroborated by the strong phraseology of all our Acts in relation to the right of appealing. The words of those Acts go, in general, to allow appeals “ after those decisions shall be final” in the Court below. The term decisions must be taken as co-extensive with the actual questions in controversy. It can not be satisfied by a decree embracing only apart or portion of the subject. So the term final means that decree which makes an end of the case in the Court below, and is used in emphatical contrast to such decrees •or orders as are only progressive to that end; as are merely interlocutory.
*351 As to tlie extent of the right of appealing, it is a matter of mere positive institution. The parly takes it to the extent, and on the terms on which it is granted. There is no great principle which calls for the correction of the appellate tribunal upon the immature and inchoate acts of the inferior Court. These, that Court may, itself, correct, on future deliberation. It is only their ultimate and solemn decisions which are the proper subjects of appeal.
In my judgment, the criterion of the right of appeal is, as aforesaid, whether the cause has been finally decided upon in all it’s parts in the Court below. This, as aforesaid, has been long the established criterion in this Court. Another criterion, however, has been lately set up: and that is to allow that right to any party who is de facto discharged from the Court below, although it may clearly appear to the appellate Court that he was erroneously so discharged, and that no complete decree can be made in the cause without him. What is this but to allow the Court below to multiply appeals at it’s pleasure, transfer to the appellate Court it’s inchoate and immature judgments, set up an arbitrary standard of appealing, and repeal so much of our laws as restrict; appeals to decrees which are final. A provision of an Act is no provision which can be thus set at nought, at the mere will and pleasure, or by the errors, of a subordinate Court.
In support of this alledged criterion, the loose words of Judges have been clutched at, who say the appeal does not lie, because “ all the parties are retained in Court, &c.” The error of Gentlemen consists in adopting the-converse of that proposition. They infer from that dictum, that if, on the contrary, a party is discharged from Court in the most incipient stage of the proceeding, the right of appeal accrues, it is entirely a non sequilar.— This idea is in utter collision with every principle on the subject, and with the provisions of our Acts, which give appeals, and give them only in cases where the decisions have been final. They do not admit, however, that the criterion of such finality is, that a party has been dis *352 chai’ged prematurely, and erroneously discharged, from the Court below.
Admitting, however, the coiTectncss of this newly discovered criterion, it does not sustain the claim of the present appellant. He has not been in fact discharged by the decree of the Court below. There is nothing in that decree which shews it, otherwise than by a remote and fallible implication.
For these reasons, I entirely concur in opinion with Judge Brooke that the appeal was prematurely allowed to the Chancery Court; and that the Decree of that Court dismissing the same for that’cause, is correct and ought to be affirmed. And the said Decree is to be affirmed accordingly.

 Templeman v. Steptoe, 1 Munf. 352, Aldridge v. Giles, 3 H. & M. 136.